IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 128,883

STATE OF KANSAS,
*Appellee*,

v.

HARLEE ELIZABETH BORDERS,
*Appellant*.

SYLLABUS BY THE COURT

The Kansas Supreme Court has inherent authority to correct its own opinion and corresponding mandate.

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Oral argument held April 6, 2026. Opinion filed August 7, 2026. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi E. Sieve*, deputy district attorney, argued the cause, and *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, C.J.: Harlee Elizabeth Borders pled guilty to first-degree premeditated murder, attempted premeditated murder, three counts of aggravated kidnapping, and one count of aggravated endangering of a child. The district court denied her presentencing motion to withdraw her plea. Borders moved for summary disposition, arguing she was

1

denied conflict-free counsel at the plea withdrawal hearing. We agreed, granted the motion, and remanded with directions to conduct a new plea withdrawal hearing with new counsel. The district court again denied the motion. Borders appeals.

FACTUAL AND PROCEDURAL HISTORY

On March 26, 2021, someone shot and killed Kristi Craig-Rodriguez and shot and injured Hunter Malloy. The State charged Harlee Borders for these crimes. It alleged that Borders, alongside Devonta Miller, forced her way into a home in Topeka where five people and a minor child were present. The State claimed that Borders herded four of the adults into a room where she shot Craig-Rodriguez and Malloy and then pistol whipped another person in the presence of the minor child before fleeing the house.

The State charged Borders with first-degree premeditated murder, first-degree felony murder, two counts of attempted first-degree murder, aggravated battery, three counts of aggravated kidnapping, kidnapping, aggravated burglary of a dwelling, and aggravated endangering a child. Borders pled guilty to first-degree premeditated murder, attempted first-degree murder, three counts of aggravated kidnapping, and one count of aggravated endangering a child.

In exchange, the parties agreed the attempted murder and aggravated kidnapping sentences should run concurrent to one another and the sentence for aggravated endangering a child should run consecutive to all other counts. They agreed the State would be free to argue for a consecutive hard 50 for the murder charge and Borders would be free to argue for a concurrent hard 25.

After the judge accepted Borders' guilty plea, her counsel, KiAnn Caprice, filed a motion for downward durational departure, requesting the court sentence Borders to a hard 25 for the murder charge. The motion indicated counsel would provide the court

2

with substantial and compelling reasons to depart from the hard 50 at the sentencing hearing.

Before the sentencing hearing, Borders filed a pro se motion to appoint new counsel and a pro se motion to withdraw her plea. In her motion for new counsel, she alleged that Caprice bullied her into accepting the plea by telling her she would never get out of prison if she went to trial. She also asserted that Caprice was withholding the preliminary transcript and evidence from her, had not been to see her often, and had talked Borders out of firing her earlier. Borders rested her motion for a new plea on the same allegations of ineffective assistance of counsel.

The district court considered the motion for new counsel and the motion to withdraw the plea at the sentencing hearing. It denied the motion for new counsel. Then Caprice argued the motion to withdraw the plea. She requested the district court grant the motion but also argued that Borders' allegations in her motion were either untrue or did not support the request. The court denied the motion to withdraw. It then considered and denied the motion for a downward durational departure. The court sentenced Borders to a hard 50 for the murder conviction, a consecutive 7 months for the aggravated child endangerment conviction, and concurrent sentences of 165 months, 61 months, 61 months, and 61 months for the attempted murder and aggravated kidnapping convictions.

Borders appealed the denial of her motion to withdraw her plea based on *State v. Prado*, 299 Kan. 1251, 329 P.3d 473 (2014), and moved for summary disposition. She argued that, under *Prado*, she was entitled to a new hearing on the motion because the district court failed to appoint her conflict-free counsel to argue the motion. The State agreed that a new hearing with new counsel was appropriate. This court granted the motion. It ruled:  "[W]e reverse the denial of appellant's presentencing motion for new counsel and to withdraw her plea, reverse appellant's resulting conviction, vacate appellant's sentence, and remand for appointment of new counsel and a hearing on

3

appellant's pro se motion to withdraw her plea." It issued a matching mandate to the district court.

On remand, the district court appointed Borders a new attorney to argue her motion to withdraw the plea. The court again denied the motion. In its order, the district court noted that this court's mandate "reverse[d]" Borders' conviction, but it reasoned that, "based on the nature of the remand, i.e. to conduct a de novo hearing on defendant's motion to withdraw her plea, the court understands the plea to be presently intact, which means defendant's convictions are also still valid pending the outcome of the court's ruling today."

At the new sentencing hearing, the district court again denied Borders' motion for a durational departure. It sentenced her to a hard 50 for the murder conviction and a consecutive 6 months for the aggravated child endangerment conviction, plus concurrent sentences of 155 months, 155 months, 155 months, and 155 months for the attempted murder and aggravated kidnapping convictions.

Borders appeals from the denial of the motion to withdraw her plea.

ANALYSIS

*The district court correctly applied this court's mandate, based on this court's correction.*

In her first two issues, Borders argues that her right to a speedy trial has been violated or, alternatively, that the district court erred when it did not take her plea anew in open court. She rests both of these assertions on an underlying claim:  that she stands convicted of no crimes because this court reversed her convictions in its summary disposition and that the district court misapplied the corresponding mandate in considering her convictions intact. We address this claim first.

4

Whether a district court complied with an appellate court mandate and the proper interpretation of that mandate is a question of law subject to de novo review. *Building Erection Services Co., Inc. v. Walton Construction Co., Inc.*, 312 Kan. 432, 435-36, 475 P.3d 1231 (2020).

Generally, a district court must implement an appellate court mandate without deviating from its instruction. K.S.A. 20-108 ("command of the appellate court" to district court "shall be carried into execution by proper proceedings, by such district court"); K.S.A. 60-2106(c) (appellate court's mandate "and opinion, without further order of the judge, shall thereupon be a part of the judgment of the court if it is determinative of the action, or shall be controlling in the conduct of any further proceedings necessary in the district court"); *State v. Cheeks*, 313 Kan. 60, 67-68, 482 P.3d 1129 (2021) (under K.S.A. 20-108 and K.S.A. 60-2106[c], "a district court is required to apply the mandate without exception"); *State v. Collier*, 263 Kan. 629, Syl. ¶ 4, 952 P.2d 1326 (1998) ("It is axiomatic that on remand for further proceedings after a decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.").

In implementing a mandate, a lower court "must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Collier*, 263 Kan. 629, Syl. ¶ 4.

When this court remanded this case in Borders' first appeal, it held "we reverse the denial of appellant's presentencing motion for new counsel and to withdraw her plea, *reverse appellant's resulting conviction*, vacate appellant's sentence, and remand for appointment of new counsel and a hearing on appellant's pro se motion to withdraw her plea." (Emphasis added.) It issued a corresponding mandate.

5

The district court noted the language in the mandate vacating Borders' conviction but reasoned

"based on the nature of the remand, i.e. to conduct a de novo hearing on defendant's motion to withdraw her plea, the court understands the plea to be presently intact, which means defendant's convictions are also still valid pending the outcome of the court's ruling today."

Borders argues the italicized language reversed all of her convictions and, consequently, the district court misapplied the mandate when it considered her convictions intact.

The State argues we should not review this claim because it is not preserved.

The State is correct that Borders did not present this argument to the district court, and that we generally do not address unpreserved claims of error.

But we have at times "declined to strictly apply" preservation rules "in certain contexts . . . after finding the underlying purpose for the rule has been satisfied." *State v. Showalter*, 318 Kan. 338, 346, 543 P.3d 508 (2024) (discussing specific and contemporary objection rule in evidentiary context). That purpose is "'to enable the court to consider [the claim] below—to prevent error—to avoid appeal.'" *State v. Scuderi*, 306 Kan. 1267, 1275, 403 P.3d 1206 (2017) (quoting *Grant v. United States*, 291 F.2d 746, 748 [9th Cir. 1961]).

That purpose has been satisfied here. The district court caught the conflicting language in the mandate and ruled on how to interpret it even though neither party flagged it as an issue. We thus move forward to the merits of Borders' claim that the district court misapplied the mandate.

6

Upon review, it is clear that our original ruling and the corresponding mandate contained an error. We remanded the case for a new hearing on Borders' motion to withdraw her plea, which, as the district court observed, is inconsistent with reversing a conviction.

We have inherent authority to correct our own opinion and a corresponding mandate and we do so today. See *Sperry v. McKune*, 305 Kan. 469, 478-79, 384 P.3d 1003 (2016) ("this court has recognized its power to recall, correct, amplify, or modify its own mandate," and "has repeatedly observed the need for the discretionary power to reconsider a prior ruling"); *Railway Company v. Merrill*, 65 Kan. 436, 451, 70 P. 358 (1902) ("If an erroneous decision has been made, it ought to be corrected speedily, especially when it can be done before the litigation in which the error has been committed has terminated finally."); *Hudson v. Riley*, 114 Kan. 332, 335, 219 P. 499 (1923) ("If there was error in the ruling it is competent for the court to correct it and especially where it can be done before the litigation in which it occurred has been finally terminated."). The correct language is as follows: "[W]e reverse the denial of appellant's presentencing motions for new counsel and to withdraw her plea, vacate appellant's sentence, and remand for appointment of new counsel and a hearing on appellant's pro se motion to withdraw her plea."

Given this correction, the district court's application of the mandate was not erroneous. Borders' convictions were not reversed, and the district court correctly moved forward to consider anew her motion to withdraw a plea with conflict-free counsel.

This conclusion settles Borders' claim that her speedy trial rights have been violated because she has not yet pled or been brought to trial since her convictions were reversed and her alternative claim that the district court erred when it did not retake her plea in open court pursuant to K.S.A. 22-3210(a)(1). Neither have any merit. We thus move forward to Borders' remaining claim of error.

7

*The district court made no error when it denied Borders' motion to withdraw her plea.*

In her final issue, Borders argues that even if the mandate did not reverse her convictions, the district court abused its discretion in denying her presentence motion to withdraw her plea for the second time.

> "To the extent the district court's exercise of discretion is informed by findings of fact, appellate courts will not reweigh evidence or reassess witness credibility.
>
> . . . .
>
> ". . . We review a district court's decision to deny a motion to withdraw a guilty or no contest plea for an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would take the view adopted by the district court; (2) it is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) it is based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. [The defendant] bears the burden to prove the district court erred in denying the motion. [Citations omitted.]" *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023).

A defendant may withdraw their plea before sentencing for "good cause." K.S.A. 22-3210(d)(1). A court generally considers three factors in deciding whether the defendant has made a good cause showing, commonly called the *Edgar* factors. These factors are "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *Bilbrey*, 317 Kan. at 62; *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006).

In her original pro se motion, Borders argued she should be permitted to withdraw her plea because her counsel had bullied her into accepting the plea by telling her she would never get out of prison if she went to trial, had withheld the preliminary hearing transcript and evidence from her, had not been to see her many times, and had talked Borders out of firing her. The district court denied the motion.

On remand, Borders' new counsel abandoned these points and advanced a new argument based on all three *Edgar* factors. Counsel claimed Borders' original counsel was incompetent because she failed to perform a mitigation investigation to look for reasons to depart from the hard 50 before encouraging Borders to enter the plea and because she failed to offer substantial and compelling reasons to depart from the hard 50 in her departure motion. He argued these failures misled Borders into entering the plea because she believed she had a chance at a hard 25 if she pled when, in fact, she did not. And he argued that all this meant Borders' plea was not fairly and understandingly made.

The district court denied the motion. It first ruled that the original pro se motion offered no grounds for relief before also rejecting Borders' new argument through a step-by-step analysis of each *Edgar* factor.

On appeal, Borders contends the district court "erred as a matter of law, as a matter of fact, and/or by being unreasonable" in making its ruling. We address the district court's rulings on each *Edgar* factor in turn.

*First* Edgar *Factor:  Whether Borders Had Competent Counsel*

> "The applicable legal standard when considering the competence of counsel for purposes of withdrawing a plea under the first *Edgar* factor is well established. When a defendant moves to withdraw a plea after sentencing, a trial court must use the Sixth Amendment constitutional ineffective assistance standard under *Strickland* to consider whether the

9

defendant was represented by competent counsel. . . . But when the same motion is made before sentencing, a lower standard of lackluster advocacy may constitute good cause to support the presentence withdrawal of a plea. [Citation omitted.]" *Bilbrey*, 317 Kan. at 64.

The district court held Borders had competent counsel for the following reasons: Caprice informed Borders of the appropriate sentencing law; Caprice argued reasons to depart at the sentencing hearing; Borders sought the plea deal she got; there was no evidence Borders would have gotten a better sentence had she gone to trial; and there was no evidence a mitigation investigation would have produced any departure evidence. The court also opined that, while perhaps Caprice should have done a mitigation investigation before plea negotiations, "the court cannot help but question what difference it would have made" because Borders testified she would not have pled had she known she would need substantial and compelling reasons for a departure but then later testified "she wanted the opportunity, moving forward, to present substantial and compelling factors" at sentencing. The court reasoned this shows that "[d]efendant is trying to have it both ways by arguing she would not have entered the plea if she had to show substantial and compelling reasons while also indicating she wants the chance to show substantial and compelling reasons counsel failed to investigate."

Borders contends the district court ignored her primary argument that a preplea mitigation investigation could have revealed the hard 25 was not a possibility and that this would have been critical information for her.

Regardless of whether the district court skirted around Borders' core argument, Borders has failed to establish this factor weighs in her favor. Even if a preplea investigation would have revealed information that influenced Borders' decision to plead, she has not shown that the failure to complete this investigation was incompetent advocacy. This court has explained that "[d]efense counsel has an obligation to advise a

10

defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant." *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 407 (1995). The district court found that Caprice fulfilled this obligation by clearly informing Borders of the applicable law and telling her she "could possibly argue for a departure" from the hard 50 to the hard 25. Borders offers no authority indicating that defense counsel must go further and investigate the likelihood of getting a favorable sentence before entering a plea. If this was critical information for Borders, she could have refused to enter the plea or asked Caprice about her chances.

The district court did not abuse its discretion in holding Borders had competent counsel.

*Second* Edgar *Factor: Whether Borders Was Misled, Coerced, Mistreated, or Unfairly Taken Advantage of*

The court held Borders was not misled, coerced, mistreated, or unfairly taken advantage of because she crafted the plea deal she got, she understood the possible sentences she faced, and she was never guaranteed a certain sentence.

Borders argues the district court rulings missed important context. She agrees "explaining the law is not intrinsically misleading," but she contends "explaining the law, as if it is a potential outcome when it really is not, is misleading."

We disagree. The plea Borders signed indicated she would have the opportunity to argue for a departure sentence, and she got that opportunity. And it appears that, for at least some time after the plea, her counsel thought reasons to depart may exist; she had her private investigator look into substantial and compelling reasons to depart after the plea. Just because they did not materialize does not mean Borders was misled. See *Solomon*, 257 Kan. at 225 ("advice that the defendant was more likely to receive

11

something less than the maximum if he pled no contest was simply an inaccurate prediction" and does not suggest plea was not knowingly and voluntarily made).

The district court did not abuse its discretion in concluding this factor did not weigh in Borders' favor.

*Third* Edgar *Factor:  Whether Borders' Plea Was Knowingly, Voluntarily, and Intelligently Made*

The court held Borders' plea was knowingly, voluntarily, and intelligently made because Borders knew she was facing a hard 50 and that the plea agreement allowed for that sentence and because Caprice never told Borders she had a strong possibility of a hard 25 sentence.

Borders argues that the district court again ignored important context. She agrees she knew the law, but she argues she was unaware of the unfeasibility of getting the hard 25. Without knowing that she would not have any substantial and compelling reasons to depart, she argues, her plea could not have been made knowingly, voluntarily, and fairly.

The district court did not abuse its discretion in holding this factor does not weigh in Borders' favor for the same reasons as above—she knew the plea only permitted her to argue for the hard 25.

In sum, it is clear Caprice informed Borders of the relevant law and conveyed only that Borders would be able to argue for the hard 25. The district court made no error in denying her motion to withdraw the plea.

Affirmed.